JAMES DAUGHTREY v. ERNST KNOLLE.

1. CONSTRUCTION—EXECUTION OF POWER.—A deed by one who signs as attorney in fact for another, for land which in the body of the deed appears as the property of the principal, to whom also the purchase-money was secured by notes payable to him, as recited in the deed, and which is acknowledged by the maker, as attorney in fact for the principal, but which deed, in the granting and warranty

clauses, appears to be the act of the attorney : *Held* in equity to be the deed of the principal, and the warranty clause not binding upon the attorney.

2. WARRANTY.—The general covenant of warranty is not broken by a deficit in the quantity of acres named in the deed, although the land may have been sold by the acre. Warranty applies to the title, not to the quantity of the land.

3. DEFICIT IN QUANTITY OF LAND SOLD.—For such deficit, if not provided for by an express warranty of quantity, an action would only lie in case of actual misrepresentation as to quantity. acted upon by the vendee. The specific acts of fraud or misrepresentation must be alleged and proved in an action to recover for such deficiency.

4. SALE OF LAND IN GROSS.—See a deed held to convey a tract of land in gross.

5. CHARGE OF COURT IN CONSTRUING DOCUMENTS ADMITTED IN EVIDENCE.—In this case the jury should have been instructed that the warranty of title is not a warranty of quantity, and that the warranty was not binding upon the attorney in fact, and that the deed, on its face, was a conveyance of the land in gross, and not warranting a specific number of acres.

APPEAL from Austin. Tried below before the Hon. Livingston Lindsay.

Knolle brought suit against James Daughtrey for $162, the amount of an alleged deficiency of 27 acres of land, at six dollars per acre, in a tract sold and represented to contain 498 acres, but which, on actual measurement, contained only 471 acres. The deed, the covenants in which are relied upon, is as follows:

THE STATE OF TEXAS, }
*Austin County.* }

Know all men by these presents, that I, James Daughtrey, of the county and State above written, in consideration of the sum of twenty-nine hundred and eighty-eight dollars, ($2,988,) five hundred dollars of which has this day been paid into my hand by Ernst Knolle, also of the county and State above written, the receipt whereof is hereby fully acknowledged—and for the balance of the said consideration, to wit, the sum of twenty-four hundred and eighty-eight dollars, ($2,488,) the said Ernst Knolle, with F. Knolle

and Christoph Kubitz, have this day executed and delivered to me their certain joint and several promissory notes, of the tenor and effect following:

The first note for five hundred dollars, payable to Felix R. Daughtrey, or order, six months after date; the second note for one thousand dollars, payable to Felix R. Daughtrey, or order, twelve mouths after date; and the third note and last for nine hundred and eighty-eight dollars, payable to Felix R. Daughtrey, or order, eighteen months after date; all of said notes bearing even date with this instrument— have granted, bargained, sold, and conveyed, and by these presents do grant, bargain, sell, and convey unto the said Ernst Knolle, his heirs and assigns, all that certain tract or parcel of land decreed to the said Felix R. Daughtrey by the County Court of Austin county, at the January Term, A. D. 1855, thereof, upon a partition of the lands belonging to the estate of Anna Daughtrey, deceased, as share No. 4, in the division of the upper part of the Daughtrey league of land, on the south side of the West Fork of Mill creek, in Austin county, about 13 miles west from Bellville, being the .four hundred and ninety-eight acres out of a tract designated on a plat of said tract in Austin county as No. 4, containing six hundred and forty-six acres, and being the balance left after taking off the one hundred and forty-eight acres, as set. forth in share No. 2 in the division of said estate, comprehended within the following metes and bounds, to wit: (Setting out field-notes.)

To have and to hold unto the said Ernst Knolle, his heirs and assigns, in fee-simple forever.

"And I, the said James Daughtrey, bind myself, my heirs and legal representatives, to warrant and forever defend the title to all and singular the above-described premises unto the said Ernst Knolle, his heirs and assigns, against the claim or claims of all persons lawfully claiming, or to claim the same or any part thereof.

"In testimony whereof I hereunto sign my name this 22d day of February, A. D. 1859.

JAMES DAUGHTREY,
*Attorney in fact for*
FELIX R. DAUGHTREY."

The defendant pleaded that the purchase was of the tract of land in gross; that it was not the covenant of the defendant, but of his principal; that the covenant was not of quantity, but of title, also the statute of limitations of two years.

Verdict and judgment for plaintiff, and defendant appealed.

The other facts appear in the opinion.

*Harris & Kleberg,* for appellant.

*Hunt & Holland,* for appellee.

MOORE, ASSOCIATE JUSTICE.—The judgment in this case is based upon the supposition that appellant is personally liable on the general covenant of warranty of title in the deed to appellee, attached as an exhibit to his petition for deficiency of the tract of land therein described. That the record does not support or warrant such a conclusion we think quite obvious.

If we were controlled alone by common-law rules of construction and interpretation, the instrument referred to in appellee's petition, and upon which he relies, might, and probably would, if binding upon any one, be treated as the deed of appellant, and not that of his principal. But in our courts where the principles and rules of equity prevail, as has been frequently decided, we should hold to the contrary. (Giddens *v.* Byers, 12 Tex., 75 ; Rogers *v.* Frost, 14 Tex., 267 ; Rogers *v.* Bracken, 15 Tex., 564.) The body of the instrument purports to be the individual deed of the appellant, though it is a conveyance of land decreed by

the County Court to Felix R. Daughtrey on the partition of his mother's estate, and the notes given for the deferred payment, as recited in the deed, were made payable to him, and it is signed by "James Daughtrey, attorney in fact for Felix R. Daughtrey." It is also to be noted that there are no subscribing witnesses to it. It cannot therefore be held to have effect as a deed until it was acknowledged as such before the clerk. And then, as may be inferred from the recitation of the certificate that appellant's name appears to the instrument as attorney in fact, it is inferable that it was in his capacity as attorney, and not in his individual character, that he acknowledged and thereby executed it.

But if there is any doubt as to the construction which should be given to the deed, looking merely to it, all doubt or uncertainty is removed when we consider, in connection with it, the other evidence tending to show the capacity in which appellant acted ; to none of which does it appear an objection was made. It clearly appears that appellee knew that the land belonged to Felix R. Daughtrey, and that appellant had no interest whatever in the land. It was at the instance and for the accommodation of appellee that appellant got from his brother authority to sell and convey the land to him. He was fully aware that the individual deed of appellant would have been inoperative and worthless as a conveyance of the land. The terms of the contract, it seems, must have been understood and agreed upon before the execution of the power of attorney. The evidence shows that appellee was anxious for its arrival before appellant received it, so that he might get a deed. The power of attorney was acknowledged in Victoria on the fifth of February, and the deed is dated on the twenty-second of the same month, showing that the deed was made soon after, if not immediately on its receipt. The power of attorney and deed were both filed for record at $10\frac{1}{2}$ o'clock March 1, 1859, and were recorded on the 15th of the month, the latter immediately after the former. In view of these facts, we think

it beyond all question that the deed was intended and understood by the parties to be the deed of Felix R. Daughtrey. Appellee would certainly not have accepted it if he had not so understood and regarded it. If it was not his deed and binding on him, appellee well knew he was getting no valid or legal title to the land ; and most assuredly he was not warranted in supposing that it was the deed of the owner, in so far as it operated as a conveyance, and yet the covenant of warranty was personally binding upon appellant, though acting merely as an agent and having no personal interest in the transaction. It follows, therefore, if appellee has any right to complain on account of the alleged deficit in the number of acres in the tract, his action should have been against the owner from whom he purchased it, and not against his agent, unless a personal undertaking by him was otherwise shown than appears to have been done on the trial.

But we are also of opinion, if the deed could be treated as the personal deed of appellant, that appellee has failed to show any valid ground of action against him. This action cannot be regarded as an appeal to the equitable power of the court to grant relief for fraud, misrepresentation, or mistake as to the quantity of land conveyed by the deed. Though appellee alleges that appellant, in selling said land and making the deed, "either fraudulently or by mistake represented and warranted said tract of land to contain the quantity of four hundred and ninety-eight acres," evidently there are no facts and circumstances set forth to show the alleged fraud or mistake entitling him to equitable relief. Obviously appellee supposed that the general covenant of warranty authorizes an action for a *pro rata* part of the purchase-money, if there is a deficit in the quantity of land mentioned in the deed. Unquestionably, where land is sold by the acre, and in many cases when the sale is in gross, and through fraud, misrepresentation, or mistake there is a material error in the quantity of land conveyed by the deed,

relief may be had in equity, whether the deed contains a covenant of warranty or not; for the court acts in such cases not upon the contract exhibited by the deed merely, but because it is shown by the evidence that the deed does not operate as by the real contract it was intended, and conveys more or less than it should have done. Certainly when the vendor asks relief, where there is an excess conveyed by the deed, the covenants in the deed have nothing to do with the matter. And it is equally clear when the purchaser complains that the deed does not convey the quantity of land for which he has paid, his action cannot be founded upon a mere covenant to warrant the title to the land conveyed. (Rawle's Cov. for Title, p. 521.)

When the covenant is for quantity as well as for title, if there is a deficit, whether there is fraud or mistake is immaterial. The fact of deficit alone would entitle the purchaser to recover. Undoubtedly the parties, if they think fit, might put a covenant of this kind in the deed. But we cannot agree that the covenant of warranty of title imports such an undertaking. The cases in this court in which relief has been had on account of a deficiency in the quantity of land sold have all shown some equitable ground for redress. No intimation is found in any of them that an action on account of such deficit could be maintained on the covenant of warranty of title. (Smith *v.* Fly, 24 Tex., 345; Weir *v.* McGee, 25 Tex. Supp., 20.)

The court also erred in not construing the deed. The jury should have been told, that warranty of title did not operate as a warranty of the quantity, and that appellant was not personally liable on it. And they also should have been instructed that the contract shown by it was for the sale of land in gross, and not by the acre. For, as is said in the case of Weir *v.* McGee, (*supra,*) "On a question whether a sale of land was by the acre or in gross, and the contract is proven by a deed, it is the province of the court to construe the deed, and it was not proper for the court to

leave the decision of the question to the jury upon the parol evidence adduced on the trial alone, or as controlling the legal import of the deed." While relief may be had, if the facts warrant it, whether the sale is of the one character or the other, if the sale is by the acre "much less variation from the quantity intended to be conveyed would be more in-dicative of a mistake, than when a specific tract was sold by metes and bounds, the quantity of acres being mentioned merely as a matter of description." (O'Connell *v.* Duke, 29 Tex., 310.)

An inspection of the deed in question in this case plainly shows, we think, that the sale was in gross. It is for "a certain tract or parcel of land decreed by the county," &c. It is described "as share No. 4 in the division," &c., "be-ing the four hundred and ninety-eight acres out of a tract designated in the plat of said Daughtrey tract in Austin county as No. 4, containing six hundred and forty-six acres, and being the balance left after taking off the one hundred and forty-eight acres, as set forth in share No. 2 in the division of said estate." Then follows the metes and bounds of the four hundred and ninety-eight acre tract conveyed. Unquestionably the leading idea expressed in the deed is to convey, not a specific number of acres of land, but a tract designated in the partition of his mother's es-tate, and set apart to the vendor as the four hundred and ninety-eight acre tract No. 4. And the court should have so construed the deed.

REVERSED AND REMANDED.